### Ladd v. Borough of West Reading Civil Service Commission

*James E. Gavin*, for appellant.

*Elizabeth A. Magovern*, for appellee Borough of West Reading Civil Service Commission.

*Christopher P. Gerber*, for appellee Borough of West Reading.

SPRECHER, *J.*, March 18, 2014—Appellant appeals the order dated November 21, 2013, which denied appellant's appeal and affirmed the decision of the Borough of West Reading Civil Service Commission. This opinion is filed pursuant to Pa. R.A.P. 1925.

## FACTS

This court heard argument and gleaned the following facts from the record of the hearing before the Borough of West Reading Civil Service Commission (Commission).

Appellant, Ronald Ladd, was a police officer for the Borough of West Reading (Borough) from May 16, 1994 to November 14, 2012. Before working for the Borough, he had worked in other police departments in Berks County. He also had a military career, with over thirty years as service, as a military police officer or security guard. He retired from the army in 2008 with a rank of Master Sergeant/First Sergeant.

On August 31, 2012, Appellant returned to work after an extended leave of absence due to surgery on his hand. The Borough of West Reading Police Department (Department) divides its police officers into two squads headed by sergeants. Upon his return, appellant was assigned to the squad of Sergeant Rick Vetter. Appellant did not want to be assigned to that squad because he did not like and did not want to work with another officer

in the squad, Officer Tom Hawn. He complained to the police chief at that time, Edward Fabriziani, who refused to change his assignment which had been a joint decision between Chief Fabriziani and the Borough mayor, Shane Keller. Chief Fabriziani testified that appellant had told him that he did not like Officer Hawn, did not want to work with him, and refused to work with him. Chief Fabriziani testified that in order to maintain order and discipline, officers are not permitted to challenge their assignments. Appellant requested a meeting with the mayor; a meeting was scheduled for September 5, 2012, but was never held due to the intervening incident of August 31, 2012, which ultimately resulted in appellant's discharge due to conduct unbecoming a police officer.

Appellant testified that officer Hawn was historically negative about him, bragging that he would not back him up. Officer Hawn had been suspended once because he had threatened to shoot appellant and his partner.

On August 31, 2012, Officer Hawn was the primary officer who responded to a domestic dispute. Appellant was his back-up. The woman had a protection from abuse order against the man whom she wanted to vacate her residence. Officer Hawn determined that the woman had invited the man into her home. After talking with the parties, Officer Hawn determined that he would not file any charges against the man.

Appellant contends that Officer Hawn yelled at him in front of the couple. Appellant became incensed that Officer Hawn disrespected him in the presence of others. He left the scene and returned to the department to write a report about an earlier call he had taken. He did the report first

before going to see Chief Fabriziani to complain about Officer Hawn, because he wanted to calm down so that he would be able to talk to Chief Fabriziani in a neutral tone.

After typing the report, appellant went to see Chief Fabriziani in his office to talk about the domestic violence call. Chief Fabriziani informed him that he had already discussed the matter with Officer Hawn and was satisfied with that officer's decision. The police chief and appellant gave conflicting testimony about what followed this disclosure.

According to appellant, Chief Fabriziani suddenly lunged out of his chair where he had been sitting and got his finger in appellant's face while screaming and spitting on appellant. Appellant testified that after Chief Fabriziani had pushed him, he had pushed him back, and the parties had engaged in a pushing match. Appellant then closed the door because he is "not a child and I'm not going to be treated like a child" (Transcript, 239). He claims that he was concerned for his own safety because he did not have a good relationship with Chief Fabriziani and did not trust him. He did not turn his back on the other man because he did not want to be attacked from behind or shot.

Appellant testified that he did not "think" that he punched Chief Fabriziani. During the struggle he was pushed towards the computer. He pushed Chief Fabriziani on the chest; unfortunately, the chief turned and struck his head on a bookcase. He is not aware that Chief Fabriziani struck his head more than once on the bookcase. Appellant admits that he had Chief Fabriziani pushed up against the bookcase until he felt the man's back muscles relax. Then appellant backed away from the chief.

On cross examination, appellant admitted that he had never informed Chief Fabriziani that he did not want to work with Officer Hawn because the other officer would not back him up. In an interview with the attorney for the Borough, he told the attorney that he was "pissed off" when he went to see Chief Fabriziani (Transcript, 265). He also told the attorney that he would not tolerate the chief's yelling at him (Transcript, 275). During the investigation, he said that he had tried to punch Chief Fabriziani, but he did not think that he had connected with Chief Fabriziani's body. At the hearing, appellant did not know if he said to Chief Fabriziani, "Who the fuck do you think you are telling me to sit down?" (Transcript, 280). During the investigation, he admitted that he may have made this statement.

Chief Fabriziani testified that appellant asked to talk with him, but became angry because he had not liked what he had said to him. Appellant went into a tirade and said he would not work with Officer Hawn. Chief Fabriziani thought appellant was leaving his office when he walked to the door; instead, appellant shut the door. Appellant returned to the corner of Chief Fabriziani's desk and told him that nobody disrespects him and that he's tired of Chief Fabriziani's pandering to Officer Hawn (Transcript, 66).

Chief Fabriziani had no guns on his person; his gun was in the office in plain sight. Chief Fabriziani asked appellant to sit down in the chair because he wanted to discuss appellant's actions which he felt were out of line. Appellant refused to sit down despite being ordered three times to do so. Appellant had a clipboard in his hand and slammed it hard on Chief Fabriziani's desk. His action

caused items to fall off the desk and the clipboard. Chief Fabriziani finally told appellant that if he did not sit down in the chair he would consider it to be disobeying a direct order and he would be disciplined.

Instead of sitting down, appellant approached closer to the chief which made Chief Fabriziani feel threatened. Appellant spoke to Chief Fabriziani through clenched teeth and with his left hand grabbed him by the side of his neck, and punched him with his right hand. The first blow landed just below Chief Fabriziani's left eye. Appellant continued to strike him, and Chief Fabriziani put his hands up to defend himself. Appellant slammed Chief Fabriziani's face into a bookcase which broke his glasses. The glasses had to be replaced. Appellant slammed Chief Fabriziani two more times into the bookcase and then threw him on top of his desk, punching him on his neck, back, and shoulders. Chief Fabriziani again felt threatened, so he yelled for his secretary. Chief Fabriziani shoved appellant back, but appellant pushed Chief Fabriziani against the credenza. Chief Fabriziani pushed appellant and left his office. He hollered for his secretary to get the borough manager and the on duty officer (Officer Hawn) because he had been assaulted. He suffered bruises, contusions, soreness, and red marks from the attack. Appellant bruised his hand, although he did not immediately report it.

When Chief Fabriziani returned to his office, appellant was still there. He ordered appellant to get his duty weapon out, unload it, and put it on the desk. Appellant complied with these requests. Chief Fabriziani told appellant in front of the borough manager that he was being placed on administrative leave pending disciplinary procedures. The Borough Manager, Richard J. Sichler, testified that when

Chief Fabriziani informed appellant of this, appellant's response was "Good luck with that" (Transcript, 32).

Mr. Sichler also testified that at 9:00 a.m., on August 31, 2012, appellant replied to him in a sarcastic voice, "That remains to be seen" after this witness had told him that it was good to see him. (Transcript, 29). Mr. Sichler received a telephone call form Chief Fabriziani's secretary to inform him that he was needed at the Borough Hall. When he returned, he thought that Chief Fabriziani was very agitated and upset. He saw a minor cut and bruising under his eyes, and he was not wearing his glasses. He also had trouble with his right leg.

Mr. Sichler testified that Chief Fabriziani's office was broken up when he had seen it. The computer was knocked to its side, papers were strewn about, an office chair was knocked over, and items that were on the desk were pushed or on the floor.

The Borough mayor, Shane Keller, placed Chief Fabriziani on administrative leave; however, he was never reprimanded about this incident. Chief Fabriziani is now a police officer within the Borough. Mr. Keller recommended that appellant be terminated, and the Borough Council voted unanimously to terminate appellant. Mr. Keller did not recommend Chief Fabriziani's dismissal.

Based on this record, this court sustained the Civil Service Commission's determination and denied appellant's appeal. Appellant filed a timely appeal.

## ISSUES

Appellant raised the following issues in his Concise Statement of Errors Complained of on Appeal:

1. Whether this court erred for failing to find that the evidence was insufficient as a matter of law because the Borough failed to produce substantial evidence of conduct unbecoming an officer in that it failed to produce evidence that appellant's conduct brought the department into disrepute.

2. Whether this court erred for failing to find that the decision of the Civil Service Commission improperly relied on evidence outside the record.

3. Whether this court erred for failing to find that the Commission erred as a matter of law by prohibiting the appellant from introducing evidence of letters to the editor.

4. Whether this court erred for failing to find that the evidence was insufficient as a matter of law in that the Borough failed to disprove the appellant's claim of self-defense.

5. Whether this court erred for failing to find that the decision of the Commission was against the weight of the evidence.

## DISCUSSION

Where a court has not received any additional evidence or testimony on an appeal from a civil service commission's decision, its scope of review is limited to determining whether the commission has committed an error of law or abused its discretion. The court must affirm the civil service commission's decision if there is substantial evidence to support it. This court found that the record in the case *sub judice* is characterized by conflicting testimony, but the uncontroverted testimony and the credible evidence support the Commission's decision to terminate appellant.

This court will address appellant's issues *seriatim*.

Appellant first contends that this court erred for failing to find that the evidence was insufficient as a matter of law because the Borough failed to produce substantial evidence that appellant's conduct brought the department into disrepute. This complaint is without merit.

Appellant was terminated for conduct unbecoming a police officer. Conduct unbecoming an officer, alone, constitutes just cause for dismissal. The conduct need not be criminal in nature or proven beyond a reasonable doubt. *Civil Service Commission of the City of Philadelphia v. Wojtusik*, 106 Pa. Cmwlth. 214, 525 A. 2d 1255 (1987). For an officer's conduct to be unbecoming a police officer, the conduct need only be such as to offend publicly accepted standards of decency. *Borough of Darby v. Coleman*, 47 Pa. Cmwlth. 9, 407 A.2d 468 (1979). The Commission does not have to produce evidence that appellant's conduct brought the department into disrepute. Society does not countenance assaults on police officers and subordinates' disobeying their supervisors' commands. It is axiomatic that such behavior brings a police department into disrepute.

Appellant next contends that this court erred for failing to find that the decision of the Commission improperly relied on evidence outside the record. This argument fails.

Appellant submits that the Commission improperly relied on the publicity of the occurrence in the local newspaper, the *Reading Eagle*, to support his dismissal and those articles were not introduced into evidence. The Commission had sufficient evidence on which to base its decision without any reliance on those articles.

Assuming arguendo, that it had relied on those articles, it was an acknowledgment that the public was aware of the altercation as was evident by the public comments of the Borough residents at the hearing. Moreover, appellant had known about the articles and their content because he wanted to introduce into evidence letters to the editor that supported his actions as described in the articles. Appellant did not suffer any prejudice as a result of the Commission's mere reference to the articles.

Appellant's third contention is that this court erred for failing to find that the Commission erred as a matter of law by prohibiting appellant from introducing into evidence letters to the editor. This complaint is meritless. The letters to the editor are irrelevant to the issue of appellant's conduct. The letters were written as responses to the reporting of the incident in the newspaper before any investigation was ever done. The public did not have all the relevant facts to render an unbiased opinion. Some, if not all, of the letters were from people who did not live within the Borough. Furthermore, the letters are not facts or a statement of the law; they are just opinions of lay persons. Therefore, they do not constitute evidence, and the Commission correctly excluded them from consideration.

Appellant's penultimate assertion is that this court erred for failing to find that the evidence was insufficient as a matter of law in that the Borough failed to disprove appellant's claim of self-defense. This contention is without merit.

The fact that the witnesses' testimony was contradictory is not a basis for a finding of a lack of substantial evidence. The Commission, which was the fact finder, was faced

with conflicting testimony and credibility determinations which were within its province.

The Commission had ample evidence to find Chief Fabriziani to be more credible than appellant. If appellant were truly afraid for his life, he could have easily exited Chief Fabriziani's office. Appellant did not have to shut the door and remain in the office. A person in fear of his life would have kept the door open. Chief Fabriziani's gun was not on his person at the time of the incident. Even appellant admits that he approached Chief Fabriziani who was sitting at his desk. A person who considered someone to be a threat would not voluntarily move closer to the person whom he feared. It was also uncontroverted that it was Chief Fabriziani, not appellant, who shouted for Chief Fabriziani's secretary. If appellant had acted in self-defense, presumably he would have been the one calling for help. For these reasons, the Commission had sufficient evidence to conclude that appellant was the aggressor in the incident.

Appellant's last complaint is that this court erred for failing to find that the decision of the Commission was against the weight of the evidence. This contention is without merit. Even assuming *arguendo* that appellant acted in self-defense, there was sufficient evidence to support a finding of conduct unbecoming a police officer. It was uncontroverted that Chief Fabriziani, appellant's commanding officer, ordered appellant to sit down, and appellant refused to do so. According to appellant, he was angry because he felt "disrespected" by both Officer Hawn and Chief Fabriziani. Appellant accused Chief Fabriziani of "pandering" to Hawn, thus verbally abusing his supervisor. Verbal abuse alone can constitute conduct

unbecoming a police officer.

Appellant submits that "two wrongs make a right." He thought that Chief Fabriziani and Officer Hawn were wrong. He therefore believed that he had the right to harangue, insult, and physically assault his commanding officer for not agreeing with his perception of the situation. It is immaterial to this issue who held the correct position. What is material is appellant's conduct. Appellant did not have the right to threaten, insult, or engage in physical violence to advocate his position. A supervising officer has the right to issue commands and make decisions without having to deal with violence or insults from a subordinate officer. Such conduct as appellant displayed is not allowed in any place of employment and is certainly not permitted by police officers who are held to a higher standard of conduct than other citizens. Society does not countenance assaults on police officers by any of its citizens. Such conduct as displayed by appellant could also reflect poorly on the police department, affecting its morale, and tend to destroy public respect and confidence in its operations.

In accordance with the foregoing opinion, this court submits that appellant's appeal should be denied and this court's order sustaining the decision of the Commission should be affirmed.